IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (347) 607-1752, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE | Case No. 3:18mj1894-SALM<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael A. Fraenza, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a deputized Task Force Officer with the Drug Enforcement Administration (hereinafter, "DEA") and have been so since October 2017. I have been employed as a Police Officer with the Town of Wallingford since July 2007 and am currently assigned to the Detective Bureau in the Narcotics Unit. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses including federal controlled substance offenses.

2. I am currently assigned to the DEA New Haven District Office (hereafter, "NHDO") Tactical Diversion Squad (hereafter, "TDS"), which investigates drug traffickers and organizations responsible for diverting and distributing pharmaceuticals and other drugs within the State of Connecticut. Due to the abuse and trafficking of opioid based pharmaceutical pills and the correlated abuse and trafficking of heroin and fentanyl, the DEA NHDO TDS is also actively investigating individuals and organizations involved with the distribution of heroin and/or fentanyl. During my assignment to the DEA NHDO TDS I have prepared numerous

affidavits in support of applications for federal search warrants and arrest warrants, as well as in support of authorizations to conduct electronic surveillance. As a case agent, I have directed and coordinated electronic surveillance, controlled purchases of drugs, physical surveillance, and undercover activities, as well as debriefed and managed confidential sources. I am familiar with the manner in which individuals obtain, finance, store, manufacture, transport, and distribute their illegal drugs. I have received instruction relative to conducting drug investigations while attending in-service training at the Connecticut Police Academy ("POSTC") in Meriden, Connecticut. I also receive periodic in-service training relative to conducting drug investigations.

3. Currently, I am involved in an investigation involving the Brian BACKMAN Drug Trafficking Organization (DTO) in New Haven, Connecticut. In particular, I am investigating violations of 21 U.S.C. §§ 841(a)(l) (Possession with Intent to Distribute and Distribution of Controlled Substances) as well as other narcotics crimes.

4. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (347) 607-1752 ("the TARGET TELEPHONE"), that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way Parsippany NJ. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit does not set forth all of the facts and evidence that I have gathered during the course of the investigation of this matter. Rather, this affidavit sets forth facts and evidence that are relevant to the requested warrant. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based upon the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute and distribution of controlled substances) have been committed, and will be committed by an individual who uses the name "Angel" and other unknown person(s). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## THE TARGET TELEPHONE

7.      The TARGET TELEPHONE has service provided by T-Mobile. An administrative subpoena was served on T-Mobile. The return indicated that the TARGET TELEPHONE was active as of 11-12-18 – the date of the subpoena. The subscriber information field returned as unlisted.

## BACKGROUND

8.      In 2016, the Drug Enforcement Administration (DEA) New Haven District Office (NHDO) began receiving information that Brian BACKMAN aka "New York Brian" was a large scale heroin distributor in the City of New Haven. Intelligence obtained through a DEA Cooperating Source (CS) stated that BACKMAN was distributing no less than (250) two hundred and fifty bricks (12,500 dosage units) of heroin on a weekly basis. The CS also stated

that the heroin was being stored in the New Hallsville section of New Haven and distributed to the Westville, Hill, and other surrounding parts of New Haven as well.

9. In June of 2018, members of the DEA's New Haven District Office's Tactical Diversion Squad and the New Haven Police Department Criminal Intelligence Unit re-initiated the investigation into the BACKMAN DTO. Through surveillance and intelligence obtained through Confidential Sources, it was determined that the BACKMAN DTO operates in the areas surrounding Dixwell Avenue and Bassett Street New Haven, Connecticut. The DTO sells a particular stamp of heroin identified as "DOA." This stamp has been in circulation around New Haven since approximately 2016. Furthermore, this particular stamp of heroin was identified as being involved in at least two documented heroin related overdose deaths in the spring and summer of 2018.

10. During the summer of 2018, (4) four controlled purchases of heroin were conducted from source of supply within the organization. These controlled purchases occurred during the week of 07-09-2018, two occurred during the week of 08-09-2018 and the final occurred during the week of 09-20-2018. The controlled purchases were made utilizing a DEACS who is known to investigators as being a credible and reliable person. During the controlled purchases, surveillance was conducted by investigators. In one instance, the source was observed operating a vehicle registered to BACKMAN. Upon completion of the controlled purchases, the heroin obtained from the sources yielded the stamp "DOA". The controlled purchases led to the arrest of the source within the organization.

## INFORMATION OBTAINED FROM FIRST COOPERATING WITNESSES

11. During the fall of 2018, law enforcement investigators met with a cooperating witness ("CW1") regarding the BACKMAN DTO. CW1 informed investigators that he/she is

4

familiar with the BACKMAN DTO and has purchased heroin from sources within the organization for approximately five years.

12. CW1 informed investigators that one of the sources that he/she bought from, Edmund JACKSON, went to New York approximately two to three times per month to purchase 200 brick of heroin on each occasion. CW1 stated that JACKSON brought it to his house in Hamden, CT. CW1 stated that eventually JACKSON was put on an ankle monitor for violating the terms of his probation and stopped going to New York, but others within the DTO would still go to New York to pick up the same quantity of heroin two to three times per month.

13. JACKSON was arrested by the state in June 2018.

14. CW1 stated that the individual who drove to New York would be paid approximately $1,000 per trip and left at approximately 4:00 AM and took the Merritt Parkway to go to New York. CW1 reported that he/she received this information directly from the people he purchased heroin from within the organization. CW1 also stated that the organization always sells "DOA" stamped heroin.

### INFORMATION OBTAINED FROM SECOND COOPERATING WITNESSES

15. In November 2018, law enforcement investigators met with a second cooperating witness ("CW2") who also provided information regarding the BACKMAN DTO. CW2 told investigators that he/she was involved in the organization and had first-hand knowledge on the inner-workings of the organization.

16. CW2 confirmed that the BACKMAN DTO, and only the BACKMAN DTO sells heroin stamped "DOA."

17. CW2 stated that since at least April 2018 BACKMAN receives his supply of heroin from a source named "Angel" in New York. CW2 also stated that approximately two to

5

three times per month a male named "Lee" (who investigators believe at this time to be Leon MCFADDEN), BACKMAN, and JACKSON meet at a specific restaurant, known to me, in New Haven at approximately 4:30 AM. Once at the restaurant, BACKMAN gave "Lee" money for anywhere between one hundred and fifty to two hundred and fifty bricks of heroin. CW2 stated that BACKMAN and JACKSON would follow "Lee" to New York to make sure he did not run off with the money. Once in New York, "Lee" would call a source known to CW2 as "Angel" who met with "Lee" near the George Washington Bridge. CW2 said that "Lee" and "Angel" would complete the heroin transaction. "Lee" then returned to New Haven via the Merritt Parkway. BACKMAN and JACKSON followed "Lee" back to New Haven. He stated that they got off at the Dixwell Avenue exit and brought the product to a stash house in Hamden.

18.    CW2 explained that JACKSON had been arrested during the spring or summer of 2018 and had been put on an ankle bracelet. After his arrest, JACKSON no longer went to New York with BACKMAN.

19.    CW2 provided telephone numbers for BACKMAN ("BACKMAN's Number"), "Lee," ("Lee's Number"), and "Angel," each number is known to me. A query through the New Haven Police Department Operational Center shows that BACKMAN's Number belongs to BACKMAN and Lee's Number belongs to Leon MCFADDEN of New Haven. The number CW2 provided to investigators for Angel is the number associated with the TARGET TELEPHONE.

20.    Law enforcement investigators served subpoenas on the various providers associated with BACKMAN's Number, Lee's Number, and the number associated with the TARGET TELEPHONE. The records show that the three numbers are frequently in contact

6

with one another. Further they are often in contact with one another on the same days and within one hour of each other.

21.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

22.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the TARGET TELEPHONE. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. On November 16, 2018, a preservation letter was sent to T-Mobile who is the provider that currently possesses the information for cell-site information, identified in Attachment B.

7

23. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the T-Mobile's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents

because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

TFO

Michael A. Fraenza
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on **20 November**, 2018

/s/ Sarah A. L. Merriam, USMJ
HONORABLE SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (347) 607-1752 that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way Parsippany NJ.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period April 1, 2018 through November 20, 2018:

  a. The following information about the customers or subscribers of the Account:
     i. Names (including subscriber names, user names, and screen names);
     ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
     iii. Local and long distance telephone connection records;
     iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
     v. Length of service (including start date) and types of service utilized;
     vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
     vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(1)(1) (Possession With Intent to Distribute, and Distribution of, Controlled Substances) and 846 (Conspiracy to Distribute Controlled Substances) that specifically relate to a drug trafficking organization operating in the New Haven and Hamden area of Connecticut.

3